WEST VIRGINIA BOARD OF DENTAL EXAMINERS

*v.*

JOHN STORCH

(No. 12095)

Submitted September 19, 1961.   Decided October 31, 1961.

*Schmidt, Laas & Schrader, Thomas B. Miller,* for appellant.

*J. Paul Waterhouse,* for appellee.

BERRY, JUDGE:

This suit was instituted in the Circuit Court of Ohio County, West Virginia, on December 14, 1959, by the plaintiff, West Virginia Board of Dental Examiners, to enjoin the defendant, John Storch, from practicing dentistry or dental hygiene, in violation of Code, 30-4-2,

as written at the time the suit was instituted. The defendant, who was engaged in repairing false teeth, contended that his activities did not constitute the practice of dentistry as defined in Code, 30-4-2, at that time.

The trial court, at the conclusion of the hearing before it, held that the activities of the defendant did not constitute the practice of dentistry under the definition contained in Code, 30-4-2, at that time. The final decree entered by the trial court on December 14, 1960, refused to grant an injunction and dismissed the bill of complaint.

On application to this Court an appeal from the final decree entered by the trial court was granted on February 20, 1961. After the appeal was granted by this Court, the West Virginia Legislature, on March 6, 1961, amended and reenacted Code, 30-4-2, making it effective from passage, and specifically included the repairing of false teeth in the definition of the practice of dentistry, which had been omitted in the former act, and deleted an exception formerly contained in subsection 2 of said section.

On August 3, 1961, the defendant by counsel filed a motion to dismiss this appeal on the grounds that the issue raised in the appeal had been rendered moot by an Act of the West Virginia Legislature, Regular Session, 1961, amending Code, 30-4-2. No further appearance was had on behalf of the defendant and no brief filed.

The case was submitted on brief and argument of plaintiff when it was regularly called on the docket September 19, 1961.

The facts in this case are not in dispute. The defendant admitted that he was not a licensed dentist, but that he was a specialist in repairing false teeth, that on numerous occasions he had repaired them and that he advertised his services and dealt directly with the public. The defendant only repaired false teeth or

broken dental plates and replaced broken, chipped or missing teeth from a dental plate, and did not reline dental plates. He says he did not fit the false teeth into the patient's mouth; that if there was any complaint about the false teeth or plate not fitting he referred the patient to a practicing dentist as he felt that was a dentist's job. The making and fitting of false teeth or dental plates was left entirely to the practicing dentist as far as the defendant was concerned. Although it is stated in plaintiffs' brief that the defendant relined dental plates, the defendant specifically denied relining plates, stating that it was a job which should be performed by a licensed dentist.

The plaintiff's evidence is to the effect that the breaking of dental plates and false teeth is often caused by the change in the tissue structures of the person's mouth, that the structural changes in the person's mouth often cause dental plates to become ill-fitted and maloccluded, subjecting them to unusual stress resulting in damage to them and causing serious health consequences, that if the dental plates are not re-fitted serious damage can result to the patient's mouth, and that the mere repair of the dental plate does not correct the problem of the change in the structure of the person's mouth.

The defendant had been engaged in repairing false teeth as a dental technician for a period of about forty years, and had done such repair work for many dentists in the past. He stated, however, that he had never fitted false teeth into a person's mouth, had not attempted to correct any malocclusion or maladjustment, and that in the event of any damage or soreness in a person's mouth which came to his attention in connection with the repair of the dental plates he referred the patient to a practicing dentist for such correction as was necessary.

It is the contention of the plaintiff that this appeal is not rendered moot by virtue of Chapter 108, Acts of the Legislature, Regular Session, 1961, amending Code,

30-4-2, that the trial court erred in refusing to grant the injunction prayed for, and in holding that the activities of the defendant in repairing false teeth did not constitute the practice of dentistry, as defined by Code, 30-4-2, which was in effect at the time the defendant performed this work.

Code, 30-4-2, containing the definition of the practice of dentistry, and a proviso relating thereto, in force at the time this suit was instituted, reads as follows:

> "Any person shall be regarded as practicing dentistry within the meaning of this article, who shall diagnose or profess to diagnose or treat or profess to treat, any of the diseases or malformations or lesions of the oral cavity, teeth, gums, or maxillary bones, or shall prepare or fill cavities in human teeth, correct malposition of teeth or jaws *or supply artificial teeth as substitutes for natural teeth,* or administer anaesthetics, general or local, in connection with any of said work, or perform any other work included in the curricula of recognized dental colleges. To open an office for the practice of dentistry, or to announce to the public in any way a readiness to do any act defined herein as the practice of dentistry, shall be construed as engaging in the practice of dentistry within the meaning of this article: Provided, however, that this section:

> \* \* \* \*

> (2) "Shall not apply to the construction, alteration, or repair of bridges, crowns, dentures, or other prosthetic or orthodontic appliances when the casts or impressions for such work have been made or taken by a licensed dentist: Provided, however, that a written authorization signed by a licensed dentist must accompany the order for such work or such work must be performed in the office of a licensed dentist under his direct and personal supervision: And provided further, that such prosthetic or orthodontic appliances shall not be advertised or sold, directly or indirectly, to the public by the dental technician or dental laboratory either as principal or agent. The burden of providing either such written authorization, or proof of direct and personal supervision, shall be

upon the person charged with the violation of this article." [Emphasis supplied]

This Section, as amended by Chapter 108, Acts of the Legislature, Regular Session, 1961, reads as follows:

"Any person shall be regarded as practicing dentistry within the meaning of this article, who shall diagnose or profess to diagnose or treat or profess to treat, any of the diseases or malformations or lesions of the oral cavity, teeth, gums, or maxillary bones, or shall prepare or fill cavities in human teeth, correct malposition of teeth or jaws or supply artificial teeth as substitutes for natural teeth, or administer anaesthetics, general or local, in connection with any of said work, or shall make, produce, reproduce, construct, *repair, alter, or restore any prosthetic denture,* crown, bridge, or other prosthetic appliance to be used in, upon, in connection with, or as a substitute for, any human tooth, or in, upon, or in connection with the human jaw or associated structure or tissue of the human mouth, or to be used in the treatment of any condition thereof, or perform any other work included in the curricula of recognized dental colleges. To open an office for the practice of dentistry, or to announce to the public in any way a readiness to do any act defined herein as the practice of dentistry, shall be construed as engaging in the practice of dentistry, within the meaning of this article: Provided, however, That this section:

\* \* \* \*

(2) "Shall not apply to a dental laboratory in the performance of dental technological work as that term is defined in section two-a of this article so long as the dental laboratory, in the performance of such work, conforms in all respects to the requirements of section two-a of this article, and further shall not apply to persons performing dental technological work, as so defined, under the direct and personal supervision of a licensed dentist or under the direct and personal supervision of a person authorized under the authority of this article *to perform any of the acts in this article defined to constitute the practice of dentistry* so long as such work is performed in connection with, and as a part of, the dental practice of such licensed dentist or other authorized person and for his dental patients." [Emphasis supplied]

It will be noted that the repairing of false teeth was not included under the definition of practicing dentistry until the 1961 amendment of Code, 30-4-2, and that the proviso in the statute in effect at the time this suit was instituted did not apply to repairing false teeth when the cast or impressions were made or taken by a licensed dentist, with the additional provisions that such work should be done by a written authorization of a licensed dentist, or performed in the office of a licensed dentist under his direction or supervision.

The proviso in subsection (2) of the amended section of Code, 30-4-2, is considerably changed and does not exclude the repairing of false teeth as constituting the practice of dentistry. Many other material changes were made by Chapter 108, Acts of the Legislature, Regular Session, 1961.

We shall first discuss whether or not this question is moot, because if it is moot, then the appeal should be dismissed and there would be nothing further for this Court to do.

The general rule, subject to certain exceptions, is that appeals will be dismissed where there is no actual controversy existing between the parties at the time of the hearing. 5 C.J.S., Appeal & Error, §1354 (1).

In the case at bar, even though the defendant states in his motion to dismiss that he is out of business because of the amendment to Code, 30-4-2, this does not terminate the controversy, because the issue deals with whether or not the defendant violated the statute pertaining to the practice of dentistry in effect at the time of the institution of this suit and is not to be disposed of under the provisions of Code, 30-4-2, as later amended. The granting of relief as originally asked is ordinarily determined by the status existing at the time of the filing of the bill. *United States v. Workingmen's Amalgamated Council of New Orleans et al.*, 54 Fed. 994; *Lewis v. Kaplan*, (Mo. App.), 5 S.W. (2d) 699. Even if the defendant went out of business, it would not prevent the granting of an injunction if one

were proper when originally asked for. See *State of West Virginia v. Helen Navy et al.*, 123 W. Va. 722, 17 S. E. 2d 626. Otherwise, any defendant could escape an injunction by merely saying he had ceased performing the illegal act.

If anything further is to be done in connection with a case or any costs or damages involved in connection with an injunction, an appeal will not be dismissed as moot where the time limit of the injunction has expired by the time of the appellate hearing or where an illegal act is legalized. *Hostler v. Marlowe et al.*, 44 W. Va. 707, 30 S. E. 146; *Kaufman v. Mastin*, 66 W. Va. 99, 66 S. E. 92; *Wyckoff v. Painter*, 145 W. Va. 310, 115 S. E. 2d 80. The same principle would apply where a previously legal act has been made illegal.

Under the facts of the case at bar, this appeal is not moot, thus the motion to dismiss on this ground is denied.

We now come to the question of whether the trial court erred in holding that the activities of the defendant in repairing false teeth did not constitute the practice of dentistry as defined by Code, 30-4-2, in effect at the time of the institution of this suit, and in refusing to grant the injunction prayed for.

In the case of *State ex rel. Floyd S. Taylor, et al. v. Harry C. Devore,* 134 W. Va. 151, 58 S. E. 2d 641, this Court interpreted Code, 30-4-2, with regard to the practice of dentistry, as it was written at the time this suit was instituted, wherein it stated: "The examining of the gums of the mouth, the taking of impressions thereof, and the fitting and supplying of artificial dentures are acts falling within the definition of the practice of dentistry, * * *".

In Code, 30-4-2, as amended in 1961, the words *repair, alter,* or *restore* any prosthetic denture, among others, were added to the definition of practicing dentistry. Additions to a statute by way of amendment are construed prospectively and not retrospec-

tively unless they are clear, strong and imperative, in requiring a retrospective meaning. 17 M. J., Statutes, §73. "Ordinarily, the interpretation of a statute as a clarification of obscurity in an earlier statute will be avoided as retrospective in effect." 82 C. J. S., Statutes, §384 (1).

"It will be presumed that the legislature, in adopting an amendment, intended to make some change in the existing law, * * *". 82 C. J. S., Statutes, §384 (2).

The statute in question, Code, 30-4-2, as written at the time this suit was instituted, had been in effect in this state for about a quarter of a century without change. It is further stated in 82 C. J. S., Statutes, §384 (2) that: "When statutory changes take place after a considerable lapse of time and after the intervention of other sessions of the legislature, it indicates an intention to supply some provision not embraced in the former statute."

It is contended by the plaintiff that the phrase to "supply artificial teeth as substitutes for natural teeth", as contained in the definition of practicing dentistry in Code, 30-4-2, at the time of the institution of this suit, and before the amendment in 1961, includes repairing false teeth.

It is difficult to so interpret this particular phrase since it would be necessary by such interpretation to assume that the artificial teeth were defective at the time they were supplied and then in need of repair. The logical interpretation of this phrase would be the supplying of proper or new artificial teeth as substitutes for natural ones without the need of any repair at the time they were supplied. Supply and repair mean two different things. Then too, it must be presumed that the legislature knew that the former statute did not include the repairing and restoring of false teeth, and intended to add something to the definition of practicing dentistry when it amended this section and added the repairing and restoring of false teeth.

*Fresno City High School Dist. v. De Caristo,* 33 Cal. App. 666, 92 P. 2d 668.

If the language of the statute at the time this suit was instituted cannot be construed or interpreted to include the repairing of false teeth or dentures, the words repair or restore cannot be read into it if they were not there by intention. *State ex rel. Kennedy et al. v. Lepon,* 219 Ind. 1, 36 N. E. 2d 276.

The practice of dentistry as a profession is subject to regulation because of its relationship with public health. A dental technician who repairs prosthetic dentures is not a professional person but a craftsman. The skill of a dental technician engaged in the defendant's type of work is similar to that of a skilled mechanic, and he is sometimes called a dental mechanic. The authorities are not uniform with regard to the right to regulate the repairing of false teeth as the practice of dentistry. The weight of authority, however, supports the proposition that the legislature may control the repairing of false teeth on such ground because of its effect on public health, under the police powers of the state, but in the cases that hold the repairing of false teeth as practicing dentistry it is specifically contained in the statute defining the practice of dentistry, and such statutes have been held to be constitutional. *Weill v. State ex rel. Gaillard et al.,* 250 Ala. 328, 34 So. 2d 132; *Jack Holcomb v. Charles L. Johnston et al.,* 213 Ga. 249, 98 S. E. 2d 561; *State v. Fishwick,* 84 Ohio App. 283, 85 N. E. 2d 136; *Board of Dental Examiners v. Jameson,* 64 Cal. App. 2d 614, 149 P. 2d 223; *Kentucky State Board of Dental Examiners v. Steely,* (Ky.) 291 S. W. 2d 823; *Amsel et al. v. Brooks et al.,* 141 Conn. 288, 106 A. 2d 152, 45 A.L.R. 2d 1234, (Appeal dismissed 75 S. Ct. 125, 348 U. S. 880, 99 L. Ed. 693.)

These cases that hold that the repairing of false teeth can be regulated under the practice of dentistry are based on statutes of various states which specifically contain the words *repair* or *repairing* as stated above, and are therefore clearly distinguished from the

statute of West Virginia effective at the time of the institution of this suit, because it did not contain the words *repair* or *repairing* false teeth as constituting the practice of dentistry. A somewhat similar case is the case of *W. R. Sanders v. The State of Texas,* 166 Tex. Cr. R. 397, 314 S. W. 2d 307, where the prior statute contained the word "repair", but it was not contained in the amendment. It was held that repairing of false teeth did not come within the definition of practicing dentistry in construing the term "construction of dental plates" contained in the statute, and when the legislature failed to include the word *repair* in the amendment to the statute, such omission was viewed as an intentional act on the part of the legislature.

Although the constitutional question is not raised in the case at bar, and is not necessary for this Court to consider, it has been held that such regulation with regard to repairing of false teeth is unconstitutional where the prior law before the amendment inserting the word "repair" made it clear that working on inert matter did not constitute practicing dentistry. See *Berry v. Summers,* 76 Idaho 446, 283 P. 2d 1093.

That the defendant was engaged in a trade or occupation cannot be denied in this case, because he had been engaged as a dental technician, a technicial occupation and not a profession, for over a period of forty years. Statutes imposing restrictions on trade or occupations are strictly construed. 17 M. J., Statutes, §68; *S. H. Hardin v. H. E. Foglesong et al.,* 117 W. Va. 544, 186 S. E. 308.

Code, 30-4-18, makes the violation of any provision of Code, 30-4-2, a misdemeanor and provides for a penalty of a fine and imprisonment for violation thereof. It further provides, in addition to the criminal provision, that the West Virginia Board of Dental Examiners may maintain an action for injunction against any person to restrain or prevent the practice of dentistry or dental hygiene. Dental hygiene, as

defined in Code, 30-4-3, before amendment, referred to a person doing minor dental operations under supervision of a licensed dentist, and required a license.

The defendant is a dental technician, and we are of the opinion that he has not been guilty of practicing dentistry or dental hygiene, under the facts of this case, and under the provisions of the statute and the authorities related thereto before and up to the time the suit for injunction was instituted. Although it may have been possible to have instituted a criminal proceeding against the defendant for a violation of the provisions of the statute relative to obtaining written authority signed by a licensed dentist for such work that he performed or for advertising to the public with regard to such work, on which points a decision is unnecessary in this case, we are of the opinion that an injunction cannot be maintained against the defendant, because the statute under which this proceeding is based, Code, 30-4-18, only provides for an injunction to restrain a person, partnership or association from practicing dentistry or dental hygiene.

The granting or denial of an injunction by a trial court is discretionary and will not be disturbed upon an appeal unless there is an absolute right for an injunction or some abuses shown in connection with the granting or denial thereof. *Stuart v. Lake Washington Realty Corp.*, 141 W. Va. 627, 92 S. E. 2d 891.

For the reasons stated herein, the decree of the Circuit Court of Ohio County in refusing injunctive relief and dismissing the bill of complaint is affirmed.

*Affirmed.*