686 S.E.2d 58

**Charles CRIHFIELD, Plaintiff Below, Appellant**

v.

**Steven BROWN and The Home Show, LLC, Defendants Below, Appellees.**

**No. 34593.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2009.

Decided Nov. 2, 2009.

Mark A. Ferguson, Esq., Sprouse & Ferguson, Charleston, WV, for the Appellant.

Fred F. Holroyd, Esq., Holroyd & Yost, Charleston, WV, for the Appellees.

WORKMAN, Justice:

This case is before the Court upon the appeal of an Order denying the Appellant's, Charles Crihfield's, Renewed Motion for Summary Judgment entered by the Circuit Court of Kanawha County, West Virginia, on April 15, 2008. In the Order, the circuit court directed that the parties "within thirty (30) days of entry of this Order, mutually agree on an arbitrator to hear the dispute in question[,]" and that .

> [i]n the event no appeal petition is filed by Plaintiff with the West Virginia Supreme Court of Appeals within the applicable time period of four (4) months after the date of entry of this Order, then the final arbitration hearing shall be held, pursuant to the Court's prior Order dated November 27, 2006, which Order shall continue in effect unchanged, except for the substitution of the arbitrator. Such final hearing shall be scheduled within a reasonable time following expiration of such appeal period, but in no event later than sixty (60) days thereafter.

Mr. Crihfield maintains that the circuit court erred in denying the Renewed Motion for Summary Judgment because: 1) the arbitration unilaterally terminated by the Appellees, Steven Brown and The Home Show, LLC, was final, as a matter of law, and the claims could not be pursued in subsequent arbitrations; 2) Mr. Brown and The Home Show, LLC, were not entitled to reinstate arbitration following an improper termination and withdrawal; 3) the effect of the circuit court's ruling was, in essence, granting summary judgment to Mr. Brown and The Home Show, LLC, and disposing of the matter in their favor without basis in law or evidence; and 4) the circuit court's Order failed to include any findings of fact or conclusions of law. In contrast, Mr. Brown and The Home Show, LLC, argue that there has been no dismissal of the 2003 arbitration either with or without prejudice. They assert that they have done nothing more than attempt to proceed with a hearing in the arbitration that was cancelled due to Mr. Brown's decision to pursue an appeal to the West Virginia Supreme Court of the lower court's order that dismissed the action and required that the parties arbitrate the matter. Based upon the Court's review of the record, the parties' briefs and arguments, as well as all other matters before the Court, the Court reverses the decision of the circuit court.

## I. Procedural and Factual History

This matter arises from a lawsuit filed in 2003 alleging a breach of contract in connection with a stock purchase agreement entered into in 2001 between Steven Brown and Charles Crihfield.[1] Mr. Brown alleged violations by Mr. Crihfield of a restrictive covenant provision contained in the purchase agreement involving solicitation of various employees of The Home Show, LLC.[2]

---

1. The Home Show, LLC, was not a party to the stock purchase agreement and was not a party in the 2003 action.

2. The restrictive covenant at issue is Section 5.3 of the purchase agreement and provides as follows:

> Following Closing Sellers shall not, without the prior written consent of Purchaser: (i) directly or indirectly, engage in the manufactured home sales business, for a term of 5 years and covering the area within a 60 mile radius of any current location of any of the Companies, directly or as an employee of any other person or entity; (ii) contact or solicit any present or future customers or employees of Companies; or (iii) disclose or use any customer list, processes, sales techniques, sales books or information, pricing information of any kind, service information or techniques, operational processes or any other proprietary information, which constitute the sole and exclusive property of the Companies, the same being "trade secrets" under the law, and upon violation of this provision the Sellers agree that Purchaser shall be entitled to an injunction and compensatory or punitive damages, and reimbursement of reasonable attorneys fees and associated costs incurred to enforce this provision; Provided however, that this restrictive covenant shall not apply to the interest of certain of Sellers in the two (2) business locations for the business operated as the "Eden Fork Home Place", on located in the Charles-

Following commencement of the 2003 action, Mr. Crihfield moved for dismissal on the grounds that the purchase agreement required binding arbitration of all disputes. Specifically, the purchase agreement contained the following provision:

11.4 *Arbitration.* Any disputes between Purchaser and Sellers that arise under or relate to this Agreement and that they cannot resolve between themselves shall be resolved exclusively and finally by binding arbitration. In the event of any such arbitration:

(i) The procedural rules (including discovery rules) governing the arbitration shall be those of the American Arbitration Association ("AAA") as then in effect.[3]

(ii) The site of the arbitration shall be Charleston, West Virginia.

(iii) Purchaser and Seller shall agree upon and choose the arbitrator.

(iv) If Purchaser and Seller are unable to agree on the choice of the arbitrator, the arbitrator shall be assigned by the AAA, from its panel for Charleston, West Virginia.

(v) The decision or award of any arbitration shall be final and binding on the parties, and the arbitrator may determine an allocation of attorneys' fees and costs between the parties.

Based upon the foregoing arbitration provision in the purchase agreement, the circuit court granted Mr. Crihfield's motion to dismiss by order dated October 3, 2003, which necessarily required that the matter be arbitrated.

Shortly thereafter, in October of 2003, Mr. Brown instituted an arbitration proceeding alleging the same restrictive covenant violations originally asserted in his complaint against Mr. Crihfield. The arbitration proceeded through discovery and preliminary hearing before the arbitrator, Judge James O. Holliday. The final hearing was scheduled for December 23, 2003.

On December 22, 2003, the eve of the final arbitration hearing, Mr. Brown, through his counsel, sent a letter by facsimile to the arbitrator stating that Mr. Brown was "withdrawing" from the arbitration in order to pursue the filing of a petition for appeal of the order dismissing his action in state court. Counsel for Mr. Crihfield also sent a letter to the arbitrator, dated December 22, 2003, responding to Mr. Brown's attempt to withdraw from the final arbitration hearing. Mr. Crihfield objected to the attempted withdrawal, taking the position that "similar to Rule 41 of the West Virginia Rules of Civil Procedure, Plaintiff is not entitled to voluntary dismissal without approval of Court or approval of all parties, following joinder of issues in the action." Mr. Crihfield requested that the arbitrator deny Mr. Brown's request to withdraw "or terminate the arbitration and proceed with the final arbitration hearing, so that this matter can finally be resolved." Alternatively, Mr. Crihfield asked the arbitrator to dismiss the arbitration with prejudice in the event the arbitrator allowed Mr. Brown to withdraw.

Needless to say, no final arbitration hearing was held on December 23, 2003. Mr. Brown filed a petition for appeal with this Court on February 3, 2004, regarding the October 3, 2003, order, which required the matter be arbitrated. By order dated May 6, 2004, Mr. Brown's petition for appeal was denied.

Thereafter, Mr. Brown attempted to reinstate the arbitration. Mr. Brown and a new party, The Home Show, LLC, filed a Demand for Arbitration through the American Arbitration Association (sometimes referred to as the "AAA") seeking arbitration between The Home Show, LLC and Mr. Crihfield. Mr. Crihfield refers to this as the "Second Arbitration." Mr. Crihfield asserted The Home Show LLC, which is identified as the

ton, West Virginia area, and the second being the proposed business location in Parkersburg, West Virginia, provided that none of Sellers shall, in connection with such excepted business locations, expand the territories beyond such excepted locations and shall not take any actions to solicit any employees of the Compa-

nies or take other actions that may damage the Companies in violation of this Section 5.3.

**3.** The July 1, 2003, version of the American Arbitration Association rules was in effect at the time the arbitration was initiated.

party seeking the Second Arbitration, was not a party to the purchase agreement containing the arbitration provision, and because the demand failed to state any specific grounds to support the demanded arbitration, the American Arbitration Association dismissed the arbitration.

Mr. Brown then made an "Amended Demand for Arbitration" with the American Arbitration Association, seeking an arbitration between Mr. Brown and Mr. Crihfield, who were the actual parties to the purchase agreement. The Home Show, LLC, was not named as a party to this arbitration. This is referred to by Mr. Crihfield as the "Third Arbitration." On February 23, 2006, Melanie Rutherford, Case Manager with the American Arbitration Association, issued a letter to counsel for Mr. Brown and The Home Show LLC, as well as Mr. Crihfield, indicating the AAA's decision to "reopen its file" in the entire matter. Ms. Rutherford noted in the letter that upon selection of an arbitrator by the parties, a preliminary hearing would be set. Mr. Crihfield asserts that "by letter dated May 22, 2006, AAA appointed Michael Spiker ... as arbitrator with regard to the Third Arbitration Demand." A preliminary hearing and scheduled conference occurred on August 17, 2006, and both parties participated.

Also on August 17, 2006, Mr. Crihfield filed the instant action in the Circuit Court of Kanawha County seeking an injunction against the renewed arbitration and a declaratory judgment that would bar Mr. Brown and The Home Show, LLC, from pursuing the new arbitration. Mr. Crihfield then filed a Motion for Summary Judgment with the Court and a hearing was scheduled for September 13, 2006. At that hearing, the Court reported that it had contacted Judge Holli-

day, who had acted as the arbitrator in 2003, and that Judge Holliday agreed to recommence the arbitration starting at the point where Mr. Brown had previously withdrawn. Thus, the parties entered into an Agreed Order, dated November 27, 2006, which provided that "[t]he parties agree to recommence the arbitration originally instituted in 2003, with Judge James O. Holliday, Senior Judge, to resume activities as mediator. The aforesaid mediation will begin at the point it left off with the December 22, 2003[,] notice of withdrawal of arbitration by Steven Brown." According to the Order, the arbitration was to be scheduled with Judge Holliday within sixty days.

Mr. Crihfield maintains that Mr. Brown and the Home Show, LLC, failed to contact Judge Holiday within the sixty-day period as specified in the Agreed Order. To the contrary, Mr. Brown and The Home Show, LLC, assert that

> [f]ollowing numerous unsuccessful attempts [4] to contact Judge Holliday, Appellees received a letter from Judge Holliday on August 31, 2007, stating that he was unable to continue with the arbitration.... No reason was given in the letter explaining his statement. Appellees notified the Appellant of the Judge's decision via letter of September 5, 2007.

(Footnote added).

Mr. Crihfield maintains that Mr. Brown and The Home Show, LLC, then unilaterally selected an entirely new arbitrator and set an arbitration hearing for January 21 and 22, 2008. Mr. Crihfield filed a Renewed Motion for Summary Judgment on January 10, 2008, arguing that a different arbitrator other than Judge Holliday would subject him to a second, new arbitration, which was not a part of the Agreed Order.[5] Thus, as Mr. Crihfield

---

4. There is no evidence in the record explaining what attempts, how many attempts, and when the "unsuccessful attempts" were made by Mr. Brown and The Home Show, LLC. Neither was there any explanation offered as to why the arbitration was not set with Judge Holliday within the sixty-day period set forth in the Agreed Order.

5. Mr. Crihfield agreed to the arbitration, because it would not subject him to "an entirely new arbitration with a new arbitrator." Thus, Mr.

Crihfield's agreement, which is expressed in the November 27, 2006, Agreed Order, was limited to the arbitration being "recommenced" from the point where the arbitration was halted in 2003 before Judge Holliday as the arbitrator. When it became clear that Judge Holliday could no longer act as the arbitrator, and that the arbitration would, therefore, have to start over, Mr. Crihfield had the right to reassert the original arguments in the Renewed Motion for Summary Judgment, because the basis for the Agreed Order no longer existed.

argued, "[t]he arbitration now attempting to be imposed by Defendants is completely inconsistent with the terms of the Agreed Order." Despite Mr. Crihfield's position, the circuit court denied his motion. Consequently, Mr. Crihfield pursued the instant appeal seeking a ruling that the withdraw from arbitration by Mr. Brown caused Mr. Brown to waive or abandon his claims, thereby precluding Mr. Brown and The Home Show, LLC, from pursuing any claims which were the subject of the previous arbitration in a new arbitration or lawsuit.

## II. Standard of Review

■ The alleged error presents a question of law which will be reviewed de novo. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."); *see also* Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo.*").

## III. Discussion of Law
### A.

■ The first issue which must be resolved is whether an order denying a motion for summary judgment is properly before this Court. Recently in *Robinson v. Pack,* 223 W.Va. 828, 679 S.E.2d 660 (2009), this Court addressed whether an order such as the one presented to the Court in the instant appeal is indeed subject to this Court's review. The Court stated that

> [t]he provisions of West Virginia Code § 58-5-1 (2005) establish that appeals may be taken in civil actions from "a final judgment of any circuit court or from an order of any circuit court constituting a final judgment." *Id.* Justice Cleckley elucidated in *James M.B. v. Carolyn M.,* 193 W.Va. 289, 456 S.E.2d 16 (1995), that "[t]his rule, commonly referred to as the 'rule of finality,' is designated to prohibit 'piecemeal appellate review of trial court decisions which do not terminate the litigation[.]'" 193 W.Va. at 292, 456 S.E.2d at 19 (quoting *U.S. v. Hollywood Motor Car Co.,* 458 U.S. 263, 265, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982)). Exceptions to the rule of finality include "interlocutory orders which are made appealable by statute or by the West Virginia Rules of Civil Procedure, or ... [which] fall within a jurisprudential exception" such as the "collateral order" doctrine. *James M. B.,* 193 W.Va. at 292–93, 456 S.E.2d at 19–20; *accord Adkins v. Capehart,* 202 W.Va. 460, 463, 504 S.E.2d 923, 926 (1998) (recognizing prohibition matters, certified questions, Rule 54(b) judgment orders, and "collateral order" doctrine as exceptions to rule of finality).

> The "collateral order" doctrine, as we explained in *James M.B.,*

>> was set forth by the United States Supreme Court in *Cohen [v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)].... In *Durm [v. Heck's, Inc.],* 184 W.Va. [562] at 566 n. 2, 401 S.E.2d [908] at 912 n. 2 [ (1991) ], we noted the doctrine as an exception to the federal interpretation of Rule 54(b), and we said that under *Cohen,* "[a]n interlocutory order would be subject to appeal under this doctrine if it '(1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the actions, and (3) is effectively unreviewable on appeal from a final judgment.'"

> 193 W.Va. at 293 n. 4, 456 S.E.2d at 20 n. 4 (citation omitted).

*Robinson,* 223 W.Va. at 832, 679 S.E.2d at 664 (footnote omitted).

It is clear that the Order at issue falls within the purview of the requirements established by this Court in *Robinson.* The subject Order conclusively determines the disputed issue of whether the case is subject to an arbitration. Next, the resolution of whether this matter is subject to a second arbitration is an important issue completely separate from the merits of the action. Finally, the issue of whether the case is still subject to arbitration is not subject to review on appeal if said irrevocable, binding arbitration proceeds to completion.

## B.

The next issue before the Court is whether a party to a binding, irrevocable arbitration can unilaterally withdraw from that arbitration without leave of the arbitrator or agreement of the remaining party or parties. It is clear, according to the terms of the purchase agreement entered into between Mr. Crihfield and Mr. Brown, that they not only agreed to binding arbitration, but they also agreed that the rules governing the arbitration would be those issued by the American Arbitration Association. It is also clear that The Home Show, LLC, was not a party to the written arbitration agreement and has no standing in this matter.

A review of the rules issued by the American Arbitration Association readily reveals that there is an absence of any rule permitting the unilateral withdrawal of a party in an arbitration. There are, however, rules that provide for a postponement of a hearing, for a modification of any period of time, or for a hearing to go forward in the absence of a party. Specifically, American Arbitration Association Rule 28 provides that "[t]he arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative." *Id.* Also, American Arbitration Association Rule 38 provides that "[t]he parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension." *Id.* Further, American Arbitration Association Rule 29 provides that

> [u]nless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

*Id.* It does not appear, however, that Mr. Brown sought any kind of relief from the final hearing, which was allowed by the American Arbitration Association rules.

Generally, where an arbitration agreement is irrevocable as in the instant action, "a party may not unilaterally withdraw an issue from arbitration." 6 C.J.S. Arbitration § 85 (2009); *see Godfrey v. Hartford Cas. Ins. Co.*, 142 Wash.2d 885, 16 P.3d 617, 623 (2001)(stating that under revised code of Washington providing that arbitrations are only revocable under certain limited circumstances, "a party cannot unilaterally withdraw an issue from arbitration"); *Knutson v. Lasher*, 219 Minn. 594, 18 N.W.2d 688, 693 (1945)(stating that "[b]y withdrawing from the arbitration proceedings and refusing to proceed further thereunder, defendants waived and abandoned the right to arbitrate"); *Brown v. Engstrom*, 89 Cal. App.3d 513, 152 Cal.Rptr. 628, 634 (1979)(stating that "[o]nce a stipulation for judicial arbitration has been executed and filed, a party may not withdraw from the arbitration proceedings"); *Juhasz v. Costanzo*, 144 Ohio App.3d 756, 761 N.E.2d 679, 684 (2001)(stating that "[p]arties subject to statutory arbitration have no right to withdraw from arbitration except under general principles of contract law").

Based upon the foregoing, the Court holds that a party to a binding, irrevocable arbitration cannot unilaterally withdraw from participation in the arbitration after it has begun. If a party to a binding, irrevocable arbitration unilaterally withdraws from the arbitration, the claims or issues raised by the withdrawing party are abandoned, thereby precluding them from being pursued in any subsequent arbitration or civil action.

In the instant matter, Mr. Brown did not have the right to unilaterally withdraw from the arbitration. While Mr. Brown clearly had the right to pursue an appeal of the dismissal of his lawsuit by the circuit court, he could have done so prior to initiating the arbitration process and prior to the night before the final arbitration hearing. After the arbitration began, Mr. Brown also could have used the American Arbitration Association Rules and sought either a postponement of the final hearing in the arbitration or a modification of the time frame set for the

arbitration. Mr. Brown did neither. Rather, Mr. Brown unilaterally communicated to both the arbitrator and Mr. Crihfield that he was unilaterally withdrawing from the arbitration. This unilateral withdrawal by Mr. Brown with no consideration or thought given to any other recourse available was fatal to his claims. The unilateral withdraw resulted in Mr. Brown abandoning his claims, thereby precluding any further arbitration or lawsuit relative to his claims.

To hold otherwise and to give Mr. Brown yet another bite at the apple would be to place the whole system of arbitration in peril. The case law is clear that irrevocable arbitration is just that—irrevocable. To allow a party to simply walk away from a binding, irrevocable arbitration with no consequence defeats the purpose of arbitration and is unduly prejudicial to the other parties to the arbitration who are trying to get the matter resolved. There simply is no basis for allowing a party who unilaterally withdraws from a binding, irrevocable arbitration to reinitiate the process that the party voluntarily choose to abandon.

## IV. Conclusion

Based upon the foregoing, the Circuit Court of Kanawha County erred in denying Mr. Crihfield's Renewed Motion for Summary Judgment. This Court, therefore, reverses the decision of the Circuit Court of Kanawha County and grants Mr. Crihfield's Renewed Motion for Summary Judgment. The Court further orders that the arbitration be dismissed, because Mr. Brown abandoned his claims, thereby precluding Mr. Brown from pursuing his claims in the arbitration, any subsequent arbitration, or any lawsuit.

Reversed.