IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-0657

_____

JOHN D. WILLIAMS
Plaintiff Below, Petitioner

**FILED**

**June 13, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

v.

KENNETH L. TUCKER and DEBORAH A. TUCKER
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Putnam County
The Honorable Phillip M. Stowers, Judge
Civil Action No. 16-C-46

REVERSED AND REMANDED

_____

Submitted: May 23, 2017
Filed: June 13, 2017

Stuart A. McMillan
Daniel J. Cohn
Bowles Rice LLP
Charleston, West Virginia
Counsel for the Petitioner

James B. Atkins
Atkins & Ogle Law Offices, LC
Buffalo, West Virginia
Counsel for the Respondents

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE LOUGHRY concurs and reserves the right to file a separate opinion.

JUSTICE WORKMAN concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.     "The denial or granting of an injunction by a trial court is discretionary and will not be disturbed upon an appeal unless there is an absolute right for an injunction or some abuses shown in connection with the denial or granting thereof." Syllabus Point 6, *West Virginia Bd. of Dental Exam'rs v. Storch*, 146 W. Va. 662, 122 S.E.2d 295 (1961).

2.     "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1*, Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.     "Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate an arbitration agreement." Syllabus Point 9, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011) (reversed on other grounds by *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012)).

i

4. In the absence of an agreement to the contrary, waiver of a contractual right to arbitration is a threshold question of enforceability to be determined by a court, not an arbitrator.

5. "The common-law doctrine of waiver focuses on the conduct of the party against whom waiver is sought, and requires that party to have intentionally relinquished a known right. A waiver may be express or may be inferred from actions or conduct, but all of the attendant facts, taken together, must amount to an intentional relinquishment of a known right. There is no requirement of prejudice or detrimental reliance by the party asserting waiver." Syllabus Point 2, *Parsons v. Halliburton Energy Services, Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016).

6. "A party to a binding, irrevocable arbitration cannot unilaterally withdraw from participation in the arbitration after it has begun. If a party to a binding irrevocable arbitration unilaterally withdraws from the arbitration, the claims or issues raised by the withdrawing party are abandoned, thereby precluding them from being pursued in any subsequent arbitration or civil action." Syllabus Point 1, *Crihfield v. Brown*, 224 W. Va. 407, 686 S.E.2d 58 (2009).

WALKER, Justice:

Petitioner John D. Williams ("Mr. Williams") appeals the June 17, 2016 order of the Circuit Court of Putnam County denying his motion for a preliminary and permanent injunction to prohibit Respondents Kenneth L. Tucker and Deborah A. Tucker ("the Tuckers") from pursuing their claims through arbitration. Mr. Williams alleges the circuit court erred by abdicating its authority to consider questions of waiver and estoppel to an arbitrator. Mr. Williams further alleges that the court erred in failing to find that the arbitration was barred as a matter of law because (1) it constitutes an impermissible collateral attack on a prior award in favor of Mr. Williams; and (2) the Tuckers waived their right to arbitration. Upon consideration of the parties' briefs, oral argument,[1] the submitted record and pertinent authorities, we reverse the circuit court's order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Tuckers began investing with Mr. Williams's investment firm in October 2007. At the outset of the professional relationship between Mr. Williams and the Tuckers, the parties entered into an Asset Management Agreement ("Agreement") on September 19, 2007. Among other things, the Agreement specifically provides for arbitration of disputes between the parties as follows:

---

[1] The Tuckers (by counsel) did not comply with the deadline to file their brief and moved this Court for leave to file their brief out-of-time. Their motion was granted, but they were deemed ineligible to participate in oral argument as a sanction. W. Va. R. App. P. 5(e) and 10 (j).

1

**Disputes** – This agreement contains a provision which requires that all claims arising between the parties in respect to this Agreement shall be resolved through arbitration.

Client is aware that:

1. Arbitration is final and binding on all parties.
2. The parties are waiving their right to seek remedies in court, including the right to a jury trial.
3. Pre-arbitration discovery is generally more limited than and potentially different in form and scope than court proceedings.
4. The Arbitration Award is not required to include factual finding or legal reasoning and any party's right to appeal or to seek modification of a ruling by the arbitrators is strictly limited.
5. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

Unless unenforceable due to applicable federal or state law, any controversy arising out of or related to any transaction with Advisor or its officers, directors, agents, or employees, or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the American Arbitration Association. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

In July 2009, the Tuckers transferred their account to a self-directed online investment platform, by which time their account balance had declined twenty-nine and one-half percent. Mr. Williams faults the economic crisis for the decline and asserts that the decline is less than or on par with other mutual funds across the market during this time period. On February 3, 2011, the Tuckers commenced an arbitration alleging that Mr. Williams had breached their contract and made unsuitable investments contributing to the decline.

Although the Agreement required binding arbitration in accordance with the rules of the American Arbitration Association ("AAA") in the event of a dispute between the parties, the Tuckers instituted arbitration proceedings against Mr. Williams before the Financial Industry Regulatory Authority, Inc. ("FINRA").[2] Before Mr. Williams responded to the FINRA arbitration demand, the Tuckers withdrew their arbitration demand. By letter dated April 5, 2011, FINRA acknowledged withdrawal of the claims. However, the dispute remained a matter of record relating to Mr. Williams's registration with the Central Registration Depository ("CRD").[3]

Mr. Williams then instituted expungement proceedings by filing his own arbitration demand with FINRA on March 31, 2011. The Tuckers consented to FINRA jurisdiction, but declined to exercise their right to participate in the proceedings and did

---

[2] FINRA is the successor to the National Association of Securities Dealers, Inc. ("NASD"), a self-regulatory organization established under the federal Securities Exchange Act of 1934, 15 U.S.C. §§ 78a through -78qq (2012). "FINRA is dedicated to investor protection and market integrity through effective and efficient regulation of broker-dealers." FINRA, http://finra.org/about (last visited June 2, 2017). FINRA is vested with the authority to create rules that govern its members and has regulatory oversight over "all securities firms that do business with the public." 72 Fed. Reg. 42170 (2007).

[3] The Central Registration Depository ("CRD") is an on-line registration and licensing system for the United States securities industry, state and federal regulators, and self-regulatory organizations administered by FINRA. The CRD contains "administrative information (personal, organizational, employment history, registration and other information) and disclosure information (criminal matters, regulatory disciplinary actions, civil judicial actions, financial information, and information relating to customer disputes)" from a variety of sources. *See* NASD Notice of Proposed Rule Change, SR–NASD–2002–168 (filed Nov. 18, 2002) available at https://www.finra.org/sites/default/files/RuleFiling/p001015.pdf (last visited June 2, 2017).

not oppose expungement. The arbitration panel rendered an arbitration award in favor of Mr. Williams. Pursuant to the Agreement and FINRA rules, Mr. Williams filed an action in the Circuit Court of Kanawha County and moved the court to confirm the FINRA arbitration panel's award in his favor. The Tuckers accepted service, but did not file a responsive pleading or otherwise oppose the expungement. An Agreed Order Granting Motion to Confirm Arbitration Award was subsequently entered by the Circuit Court of Kanawha County on January 27, 2012.

Four years later, on January 10, 2016, the Tuckers filed an arbitration demand with the AAA asserting the same claims against Mr. Williams as in their original FINRA arbitration demand. Mr. Williams demanded withdrawal of the arbitration proceeding and the Tuckers refused. Mr. Williams then filed a motion in the Circuit Court of Putnam County for a preliminary and permanent injunction to prevent the Tuckers from pursuing a second arbitration. Mr. Williams argued that the second arbitration was barred because the claims were precluded as an impermissible collateral attack on the prior FINRA arbitration award that had been confirmed by order of the Circuit Court of Kanawha County. Mr. Williams also argued that the Tuckers had waived their right to arbitration. The Tuckers responded that they had not waived their right to arbitrate, and, in any case, the preclusive effect of the prior judgment and determination of whether they waived their rights to arbitrate are questions for an arbitrator, not the court. The court below denied the injunction and ordered arbitration,

4

reasoning that Mr. Williams's defenses to the arbitration were themselves arbitrable. It is from this Order that Mr. Williams appeals.

## II.    STANDARD OF REVIEW

We consider in this appeal the circuit court's disposition of Mr. Williams's request for injunctive relief, which resulted in the circuit court compelling arbitration. We have held that "[t]he denial or granting of an injunction by a trial court is discretionary and will not be disturbed upon an appeal unless there is an absolute right for an injunction or some abuses shown in connection with the denial or granting thereof." Syl. Pt. 6, *West Virginia Bd. of Dental Exam'rs v. Storch*, 146 W. Va. 662, 122 S.E.2d 295 (1961). Here, however, we must maintain a two-pronged standard of review because the denial of injunctive relief rested on a question of law. In this regard, "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." *Syl. Pt. 1, Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415, (1995). Accordingly, the circuit court's order denying the injunction is reviewed for an abuse of discretion, but we examine de novo the underlying legal conclusions on which the denial is based. With these standards in mind, we consider the arguments of the parties.

## III.    DISCUSSION

It is undisputed that the parties entered into a valid agreement to arbitrate their disputes and that the Tuckers' claims fall within the scope of the arbitration

agreement. That said, the questions presented on appeal are whether the defenses of waiver and estoppel are to be determined by the court and, if so, whether the court should have enjoined the arbitration on the grounds of waiver or estoppel. We will address each in turn.

## A. Is Waiver Determined by the Court or an Arbitrator?

We first recognize that arbitration is purely a matter of contract. *State ex rel. Barden & Robeson Corp. v. Hill*, 208 W. Va. 163, 168, 539 S.E.2d 106, 111 (2000). It is undisputed that Mr. Williams and the Tuckers contracted to submit their disputes to arbitration. However, the Tuckers contend that whether they waived their contractual right to arbitrate is a matter to be determined by the arbitrator. We disagree.

We consistently have recognized the role of the court in evaluating the enforceability of an arbitration agreement under state contract law. In *Schumacher Homes of Circleville, Inc. v. Spencer*, 237 W. Va. 379, 787 S.E.2d 650 (2016), we observed:

> Once the arbitration clause has been severed or separated out for scrutiny, the FAA limits the *trial court* to considering only two threshold questions: (1) Under state contract law, is there a valid, irrevocable, and enforceable arbitration agreement between the parties? And, (2) Does the parties' dispute fall within the scope of the arbitration agreement?

*Id.* at 388, 787 S.E.2d at 659 (emphasis added). We find that the issue of waiver before us in this appeal relates to the first threshold question of enforceability. Regarding the application of state contract law, we have observed, "[n]othing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses – such as laches, estoppel, *waiver*, fraud, duress, or unconscionability – may be applied to invalidate an arbitration agreement." Syl. Pt. 9, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011) (reversed on other grounds by *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) (emphasis added). *See also Geological Assessment & Leasing v. O'Hara*, 236 W. Va. 381, 387, 780 S.E.2d 647, 653 (2015) ("[I]f the contract defense exists under general common law principles, then it may be asserted to counter the claim that a . . . provision binds the parties.").

We discussed waiver in the context of arbitration in *Parsons v. Halliburton Energy Services, Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016):

> Stated differently, "[t]he FAA recognizes that an agreement to arbitrate is a contract. The rights and liabilities of the parties are controlled by the state law of contracts." . . . "Thus, the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context."

*Id.* at 147, 785 S.E.2d at 853 (citations omitted). Based on that reasoning, we held in *Parsons* that "[t]he right to arbitration, like any other contract right, can be waived." *Id.* at Syl. Pt. 6, in part. Our law is clear that waiver is a general contract defense that may be applied to invalidate a contract. We now hold that in the absence of an agreement

7

to the contrary, waiver of a contractual right to arbitration is a threshold question of enforceability to be determined by a court, not an arbitrator.[4] Having determined that the issue of waiver below should have been determined by the court and being fully apprised of the facts and arguments, we now turn to our state contract law relating to whether the Tuckers waived their right to arbitrate.

## B.    *Waiver of the Right to Arbitrate*

As we discussed in *Parsons*, "the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context. The essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *Parsons*, 237 W. Va. at 147, 785 S.E.2d at 853 (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)). "To effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right." Syl. Pt. 2, in part, *Ara v. Erie Ins. Co.*, 182 W. Va. 266, 267, 387 S.E.2d 320, 321 (1989). Waiver "may be made by an express statement or agreement, or it may be implied from the conduct of the party who is alleged to have waived a right." *Parsons*, 237 W. Va. at 144, 785 S.E.2d at 850. Further, we have held:

> The common-law doctrine of waiver focuses on the
> conduct of the party against whom waiver is sought, and

---

[4] There is no delegation provision in the Agreement. In the absence of a "clear and unmistakable" delegation provision evincing that the parties agreed to arbitrate arbitrability, the default expectancy is that a court resolves questions of arbitrability. See Schumacher Homes of Circleville, Inc. v. Spencer, 237 W. Va. 379, 391, 787 S.E.2d 650, 662 (2016).

8

> requires that party to have intentionally relinquished a known right. A waiver may be express or may be inferred from actions or conduct, but all of the attendant facts, taken together, must amount to an intentional relinquishment of a known right. There is no requirement of prejudice or detrimental reliance by the party asserting waiver.

Syl. Pt. 2, *Parsons*. Thus, "[t]here must be first, the existence of the right; second, knowledge of the existence of such right; and third, voluntary intention to relinquish." *Hoffman v. Wheeling Sav. & Loan Ass'n*, 133 W. Va. 694, 713, 57 S.E.2d 725, 735 (1950). Applied in the arbitration context:

> To establish waiver of a contractual right to arbitrate, the party asserting waiver must show that the waiving party knew of the right to arbitrate and either expressly waived the right, or, based on the totality of the circumstances, acted inconsistently with the right to arbitrate through acts or language.

Syl. Pt. 6, *in part*, *Parsons*.

As discussed above, there is no dispute that the Tuckers had the right to arbitrate pursuant to the Agreement. Relating to knowledge of the right, we have held that it may be actual or constructive. *Id.* at 147, 785 S.E.2d at 853. Further, we have noted that "it does not seem unduly onerous to charge the parties to a contractual dispute with constructive knowledge of the terms of the underlying contract" and, likewise, that "a party should be deemed to have knowledge of the terms of agreements that he has executed." *Id.* (quoting Thomas J. Lilly, Jr., *Participation in Litigation as a Waiver of the Contractual Right to Arbitrate: Toward a Unified Theory*, 92 Neb. L. Rev. 86, 122 (2013); *Bros. Jurewicz, Inc. v. Atari, Inc.*, 296 N.W.2d 422, 429 (Minn. 1980)). Thus, the

9

execution of the Agreement by the Tuckers imputes to them constructive knowledge of the terms of the Agreement. Moreover, the institution of arbitration proceedings by the Tuckers with FINRA in 2011, evinces, at minimum, constructive knowledge of the existence of the right to arbitrate, albeit in an improper forum.

We next consider, as we did in *Parsons*, whether a party's participation in other proceedings constituted waiver of the right to arbitrate. In *Parsons*, the plaintiff filed a civil action in circuit court against his employer under the West Virginia Wage Payment and Collection Act[5] for failing to pay final wages in a timely fashion. *Parsons* at 142-43, 785 S.E.2d at 848-49. The plaintiff's employment contract, however, provided that all disputes with the defendant would be "finally and conclusively resolved through arbitration . . . instead of through trial before a court." *Id.* at 142, 785 S.E.2d at 848. The defendant employer repeatedly sought extensions to file a responsive pleading and volunteered to produce class-wide discovery before moving to compel arbitration. *Id.* at 144, 785 S.E.2d at 850. The plaintiff contended that the defendant's participation in litigation served to waive the right to arbitrate. *Id.* We disagreed, reasoning that the defendant had made no formal, substantive response to any of the plaintiff's requests, neither party had formalized and filed a written stipulation agreeing to an enlargement of time to respond pursuant to Rule 6(b) of the West Virginia Rules of Civil Procedure, and the defendant's first filing with the circuit court was a motion to dismiss that clearly asserted the right to arbitration. *Id.* at 148-149, 785 S.E.2d at 854-55.

_____

[5] W. Va. Code §§21–5–1 to –18.

10

The facts in the case before us differ from those in *Parsons* in several respects. First, we are not analyzing the effect of a party participating in litigation on the right to arbitrate, but rather the effect of instituting a prior *arbitration* on the right to arbitrate. Second, the attendant facts and circumstances vary drastically concerning the amount and type of participation.

Relating to the first incongruity, we note that the analysis is much the same, but call attention to it here because the facts below add to the conclusion that the Tuckers acted inconsistently with their right to arbitrate under the Agreement despite having actually asserted their claims in arbitration. As discussed above, the parties' contract controls their respective rights and liabilities. The Agreement dictated that the Tuckers had the right to have their issues resolved in arbitration *pursuant to the AAA*. The Tuckers chose instead to pursue their claims in a different forum when they filed their claim with FINRA.

Mr. Williams, as a FINRA member, is required to abide by FINRA's rules, including its arbitration provisions. FINRA's arbitration rules provide that if "requested by the customer" a FINRA member must arbitrate a dispute that "arises in connection with [their] business activities" under the FINRA Rules. FINRA R. 12200. While Mr. Williams, by virtue of being a FINRA member, had a default obligation to arbitrate with the Tuckers under the FINRA Rules, the parties superseded and modified that obligation through contract. *See, e.g.*, *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741

11

(9th Cir. 2014) ("[A] contract between the parties can supersede the default obligation to arbitrate under the FINRA Rules."); *UBS Fin. Servs. v. Carilion Clinic*, 706 F.3d 319, 328 (4th Cir. 2013) ("[T]he obligation to arbitrate under FINRA Rule 12200 can be superseded and displaced by a more specific agreement by the parties."). Thus, one forum is to the exclusion of the other: the Tuckers did not have dual rights to arbitrate under both FINRA and the AAA. The Tuckers initiated proceedings under FINRA, withdrew their complaint, and did not oppose expungement or otherwise participate in FINRA's determination of the merits of their claim. Moreover, the Tuckers signed an agreed order expunging their claims against Mr. Williams which was entered by the Circuit Court of Kanawha County. The Tuckers' abandonment of their claims in the forum they improperly chose demonstrates conduct inconsistent with their right to arbitrate under the AAA. We have held:

> A party to a binding, irrevocable arbitration *cannot unilaterally withdraw from participation in the arbitration after it has begun*. If a party to a binding irrevocable arbitration unilaterally withdraws from the arbitration, the claims or issues raised by the withdrawing party are abandoned, thereby precluding them from being pursued in any subsequent arbitration or civil action.

Syl. Pt. 1, *Crihfield v. Brown*, 224 W. Va. 407, 686 S.E.2d 58 (2009) (emphasis added). In *Crihfield*, the parties agreed to arbitrate under the AAA, which, we explained, does not have a rule permitting the unilateral withdrawal of a party in an arbitration. *Id.* at 412,

12

686 S.E.2d at 63. We further explained the policy perspective of barring a second arbitration as follows:

> To hold otherwise and to give [the plaintiff] yet another bite at the apple would be to place the whole system of arbitration in peril. The case law is clear that irrevocable arbitration is just that—irrevocable. To allow a party to simply walk away from a binding, irrevocable arbitration with no consequence defeats the purpose of arbitration and is unduly prejudicial to the other parties to the arbitration who are trying to get the matter resolved. There simply is no basis for allowing a party who unilaterally withdraws from a binding, irrevocable arbitration to reinitiate the process that the party voluntarily chose to abandon.

*Id.* at 413, 686 S.E.2d at 64.

Here, the Agreement specifically states that the parties will arbitrate disputes under the AAA rules and further states that "[a]rbitration is final and binding on all parties." While FINRA may permit withdrawal of a complaint without prejudice, Mr. Williams did not consent to be governed by FINRA Rules for the arbitration of their disputes,[6] nor did the parties' agree that FINRA rules would override their intent to make any arbitration final, binding and irrevocable pursuant to the AAA. Rather, Mr. Williams was saddled with operating within FINRA's jurisdiction once the Tuckers had filed their claims in that forum in order to expunge his record. We find our reasoning in *Crihfield* equally applicable to the facts before us and decline to allow the Tuckers to reinitiate the

---

[6] We speak here only to the Tuckers' initial arbitration demand and not to subsequent expungement proceedings initiated by Mr. Williams. Of course, outside of the instant context, Mr. Williams, as a FINRA member, is subject to FINRA Rules.

arbitration process under the AAA after having voluntarily abandoned their claims in arbitration under FINRA.

Being represented by counsel, the Tuckers are assumed to have been advised of the implications of the expungement proceedings, i.e., that their claims would be substantively reviewed by a panel of FINRA arbitrators and affirmative factual findings made in order to determine whether the circumstances met one of the grounds for expungement. *See* FINRA R. 12805; 2080. The Tuckers were provided with notice of the hearing so as to present their claims against Mr. Williams and defenses to the expungement of his record with the CRD. The Tuckers not only declined to participate in the expungement proceedings, but also explicitly stated they did not oppose the expungement. Further, the Tuckers signed the Agreed Order Granting Motion to Confirm Arbitration Award entered by the Circuit Court of Kanawha County. Viewed together, the totality of the circumstances demonstrates the Tuckers waived their right to pursue any future arbitration under the Agreement.[7]

---

[7] In *Parsons*, we discussed that a party need not show detrimental reliance to effect a waiver and differentiated the concept of waiver from that of estoppel. *See Parsons*, 237 W. Va. at 145, 785 S.E.2d at 851 ("the distinction between the common law doctrines of estoppel and waiver is simple: estoppel requires proof of prejudice or detrimental reliance; waiver does not. . . . 'the terms "waiver" and "estoppel" have often been used without careful distinction, and thereby abused and confused.'") (citations omitted). The facts before us present not only a waiver through conduct, but an inducement on behalf of another party to institute expungement proceedings. However, because we find that the Tuckers waived their right to arbitrate through their own conduct, we need not analyze whether the Tuckers would have been estopped from

14

## IV. CONCLUSION

In accordance with our resolution of the dispositive issues herein raised, we reverse the June 17, 2016 Order of the Circuit Court of Putnam County, and remand for the entry of an order enjoining the Tuckers from pursuing further arbitration and for any other proceedings consistent with this opinion.

Reversed and Remanded.

---

pursuing a second arbitration. Likewise, because we hold that the Tuckers waived their right to arbitrate, we need not consider the remaining assignments of error.