518 S.E.2d 368 (1999)
205 W.Va. 364
Philip D. GALLERY, Sharon M. Gallery, natural guardians and next friends of Matthew Robert Gallery, Plaintiffs below, Appellants,
v.
WEST VIRGINIA SECONDARY SCHOOLS ACTIVITIES COMMISSION and Warren Carter, Executive Secretary, West Virginia Secondary Schools Activities Commission; and All Other Members of the West Virginia Secondary Schools Activities Commission, Defendants below, Appellees.
No. 25480.
Supreme Court of Appeals of West Virginia.
Submitted June 1, 1999.
Decided July 9, 1999.
*369 Richard G. Gay, Esq., Margaret B. Gordon, Esq., Berkeley Springs, West Virginia, Attorneys for Appellants.
William R. Wooton, Esq., The Wooton Law Firm, Beckley, West Virginia, Attorney for Appellees.
Brentz H. Thompson, Lewisburg, West Virginia, Attorney for Amici Curiae, The West Virginia School Boards Assoc.
PER CURIAM:

I.
In October of 1995, Matthew Gallery, then of 7th grade age, was being "home schooled" in Hampshire County, West Virginia.[1] Matthew and his parents, Philip and Sharon Gallery, the appellants herein, asked permission from the principal of their local junior high school, Capon Bridge Junior High, for Matthew to try out for the school's cross-country team. The principal told the Gallerys that *370 Matthew was barred from trying out for the team because of Rule 127-2.3.1[2], promulgated by the West Virginia Secondary Schools Activities Association ("the SSAC"), the appellee herein.[3]
The Gallerys then appealed to the SSAC, asking that Matthew be allowed to try out for the cross-country team. The SSAC denied the Gallerys' request. The SSAC applies Rule 127-2-3.1 to prohibit all home-schooled children, without exception, from participation in interscholastic athletics.[4]
Subsequently, in May of 1997, near the end of Matthew's 8th grade year, the Gallerys filed suit in the Circuit Court of Hampshire County, asking that the circuit court require that the SSAC permit Matthew to try out for the Capon Bridge Junior High cross-country team. They asserted various constitutional and statutory causes of action. In September of 1997, the Circuit Court of Hampshire County granted a preliminary injunction to that effect, and Matthew was able run cross-country on behalf of Capon Bridge Junior High during the 1997-98 school yearagewise, Matthew's 9th grade year.[5]
In June of 1998, after Matthew had completed his 9th grade year, the circuit court issued a final order dissolving the preliminary injunction and finding for the appellee SSAC. The circuit court concluded that the SSAC's application of Rule 127-2.31 to bar all home-schooled students from participation in interscholastic athletics was neither statutorily or constitutionally prohibited. Specifically, the circuit court held that the SSAC's bar on the participation of home-schooled students in interscholastic athletics was permissibly designed to avert the danger that home-schooling would be used as a way to avoid the academic achievement or "C average" requirement for interscholastic athletic eligibility.[6]
After the circuit court issued its ruling, Matthew entered the public school system as a 10th grader, and he became a regular student in the Hampshire County public school system. He is now, therefore, under the SSAC's policy, eligible for interscholastic athletics, and it appears from the briefs that he in fact participated during his 10th grade year.

II.
The SSAC contends that the instant appeal should be dismissed as moot. The SSAC argues that because Matthew is no longer a home-schooled student and is enrolled in the public school system, and can participate in interscholastic athletics, there is no longer a live controversy that this Court must resolve.
In their briefs, the Gallerys agree that there is no longer a live controversy. The Gallerys do not suggest that they currently wish Matthew to return to home-schoolingeven if he were eligible to compete in interscholastic athletics as a home-schooler.
Thus, because there is no longer an underlying dispute between the parties, the instant appeal is subject to dismissal on the ground of mootness. See Syllabus Point 1, West Virginia Bd. of Dental Examiners v. Storch, 146 W.Va. 662, 122 S.E.2d 295 (1961).
*371 However, this Court retains the discretion to address issues that are raised in technically moot cases. We set forth guidelines for deciding whether and when to address such issues in Syllabus Point 1 of Israel by Israel v. West Virginia Secondary Schools Activities Comm'n, 182 W.Va. 454, 388 S.E.2d 480 (1989):[7]
Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.
Examining the first of these three factors as they apply to the instant case, we conclude that there probably would be some degree of collateral consequences from declining to assess the validity of the SSAC's blanket ban on home-schooled students' participation in interscholastic athletics in the instant appeal. But on the record before us, we have no idea of the scope of those consequences, other than our speculation that they are probably not great. Certainly the collateral consequences from not deciding an issue that is moot in the instant case are far less than were present in Israel, supra, where we considered the propriety of a rule that affected many thousands of students, even though the student who brought the case had graduated from high school when we decided the case.
Looking to the second factor, again because of the limited record before us, we similarly have no idea of the scope of the public interest involved in the issues that were before the circuit court.
As to the third factor, it does not appear that the issues raised in the instant case are so fleeting that they will inherently and necessarily escape review if presented in a subsequent case. We cannot assume that all home-schooled children and their families who want a chance to play interscholastic sports as home-schoolers will not persist in that desire. Thus, if this issue remains alive, we should expect to see another case where a live controversy is presented to this Court.
Summarizing, we conclude that there is uncertainty as to the weight to be accorded to the collateral consequences and public interest factors, and the weight to be assigned to the "escaping review" factor is less than compelling.
Several important considerations weigh in favor of adhering to our general mootness rule. First, it cannot be disputed that consideration of the legitimacy of the SSAC's policy involves a difficult balancing of wide array of competing fundamental rights.[8] Additionally, the record below is not well-developed in key areas that are fundamental to evaluating the circuit court's ruling.[9] The instant case is therefore a less-than-ideal vehicle for making a determination that will inherently affect and impinge upon core protected areas, and this fact weighs in favor of adhering to our general mootness rule.
Additionally, a reading of W.Va.Code, 18-8-1 [1995] and 18-2-25 [1967] compels the conclusion that all of the participants in the educational endeavors of our state are involved *372 in a complementary effort to further the goal that every one of our state's childrenwhether in parochial, private, public, home-based, or other educational programshas access to the richest possible menu of educational and developmental experiences. To further that effort, no one can dispute that the issues posed in the underlying case would be better addressed and resolved cooperatively and not confrontationally. This last consideration also weighs in favor of this Court staying its hand, where there is no live controversy that we must decide.[10]

III.
Ultimately, this Court retains discretion in choosing to apply the rule of mootness. Israel, supra. In the instant case, after considering the foregoing factors, we adopt the position urged upon us by the SSAC that this matter is moot, and come down on the side of applying that rule. Consequently, the instant appeal is dismissed as moot.
Appeal Dismissed.
NOTES
[1] W.Va.Code, 18-8-1 [1995] establishes procedures and standards for "Instruction in home or other approved place." "Home-schooling" is the term commonly used to refer to such instructional activity. The statute reads in pertinent part:

§ 18-8-1. Commencement and termination of compulsory school attendance; exemptions.
Compulsory school attendance shall begin with the school year in which the sixth birthday is reached prior to the first day of September of such year or upon enrolling in a publicly supported kindergarten program and continue to the sixteenth birthday.
Exemption from the foregoing requirements of compulsory public school attendance shall be made on behalf of any child for the following causes or conditions, each such cause or condition being subject to confirmation by the attendance authority of the county:
* * *
(a) Exemption B. Instruction in home or other approved place.(a) Such instruction shall be in the home of such child or children or at some other place approved by the county board of education and for a time equal to the school term of the county.
* * *
The superintendent or a designee shall offer such assistance, including textbooks, other teaching materials and available resources, as may assist the person or persons providing home instruction subject to their availability. Any child receiving home instruction may, upon approval of the county board of education, exercise the option to attend any class offered by the county board of education as the person or persons providing home instruction may deem appropriate subject to normal registration and attendance requirements....
[2] WVSSAC Rule 127-2-3.1 states:

To be eligible for participation in interscholastic athletics, a student must be enrolled in a member school before the eleventh instructional day of the semester in which he competes. Enrollment must be continuous after the student has officially enrolled in the school.
[3] The SSAC is established by W.Va.Code, 18-2-25 [1967] to regulate athletic and other extracurricular activities of secondary schools. The commission promulgates:

... rules and regulations providing for the control, supervision and regulation of the interscholastic athletic events and other extracurricular activities of such private and parochial secondary schools as elect to delegate to such commission such control, .... Any such private or parochial secondary school shall receive any monetary or other benefits in the same manner and in the same proportion as any public secondary school.
[4] The SSAC permits participation in interscholastic athletics by students who receive instruction in parochial, private and public schools. W.Va.Code, 18-2-25 (1965).
[5] The record indicates that Matthew is a very intelligent and able student academically, and there is nothing in the record suggesting that his behavior (on and off the athletic field) is anything but good.
[6] The circuit court made both findings of fact and conclusions of law in its final order. In light of our ruling in this opinion, we need not discuss the standard of review to be applied to the order.
[7] In Israel we reviewed SSAC rules regarding gender fairness in statewide athletic programs.
[8] These include the right of the state to govern and regulate its public educational system and private educational programs, including home-schooling; the ability of parents and guardians to exercise core child-rearing rights; the rights of all children in this state to access legislatively and constitutionally mandated educational services; and the particular rights of exceptional and special needs children and their families.
[9] For example, there is little evidence in the record on the issue of whether the SSAC's policy is reasonably necessary to prevent the use of home-schooling to avoid academic achievement requirementsa consideration that was a principal basis for the circuit court's approval of the SSAC policy. The Gallerys do cite us to a number of states (but hardly a majority) where the Gallerys say that home-schoolers are allowed to participate in interscholastic athletics. On the other hand, the SSAC cites us to case law holding that home-schoolers can be permissibly banned from interscholastic athletics without offending constitutional principles.
[10] Of course, it is the job of the judicial system and this Court to resolve disputes if the parties cannot reach a resolution extra-judicially.