FILED

**June 1, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-305 –   *Credit Acceptance Corporation v. Kenneth E. Stanley and Kerry J. Stanley*

Justice Wooton, dissenting:

The freedom of contract includes not only the power to make a contract, but also the freedom to waive, modify, or unmake the contract. Over a century ago, two of our nation's most distinguished jurists eloquently affirmed this principle. Justice Benjamin Cardozo observed that:

> Those who make a contract may unmake it. The clause which forbids a change may be changed like any other. The prohibition of . . . waiver may itself be waived. . . . What is excluded by one act is restored by another. You may put it out by the door; it is back through the window.

*Beatty v. Guggenheim Expl. Co.*, 122 N.E. 378, 381 (N.Y. 1919). Justice Oliver Wendell Holmes similarly proclaimed, in 1889: "Attempts of parties to tie up by contract their freedom of dealing with each other are futile." *Bartlett v. Stanchfield*, 19 N.E. 549, 550 (Mass. 1889).

In simple terms, parties may alter their contract, and they may waive the specific terms of their agreement, by their actions and course of dealing with one another.

I dissent because the majority opinion does not embody that long-standing legal proposition. If a contract has an arbitration clause, the majority opinion refuses to accept that a party filing a lawsuit constitutes that party's waiver of its right to arbitrate. The majority opinion also refuses to accept that once a party waives its rights under a

1

contract, it cannot unilaterally regain them – even if the contract has "anti-waiver" language, because anti-waiver clauses can themselves be waived by a party's course of conduct. That is the true meaning of freedom of contract.

At the heart of this case is an adhesive contract clause with a dual purpose: first, the clause binds the parties to resolve their disputes by arbitration; and second, the clause contains anti-waiver language[1] purporting to hold that a party may file a lawsuit in a courtroom but, at any time in the future, change their mind and insist on an arbitration

_____

[1] One Westlaw resource defines anti-waiver clauses thusly:

A no waiver clause aims to preserve a party's rights and remedies in case it fails to exercise one of its rights under the contract or pursue the other party for a breach of the contract. The clause typically provides that:

All waivers must be in a writing signed by the waiving party.

A waiver of one provision does not operate as a waiver of any other provision.

The failure to exercise or delay in exercising any right or remedy does not constitute a waiver of that right permanently.

A single or partial exercise of any right or remedy does not preclude further exercise of the right or remedy or exercise of another right or remedy.

"Boilerplate Clauses Overview," Westlaw Practical Law, Practice Note w-023-7181 (last accessed May 28, 2026).

Anti-waiver language in contracts goes by numerous titles: a nonwaiver provision, no waiver clause, failure to enforce clause, non-waiver clause, a waiver provision, or no oral modification clause.

forum – particularly if the opposing party shows any opposition, such as by filing a counterclaim. This is not a contract with any element of negotiation to reach the terms; the terms were unilaterally imposed by Credit Acceptance Corporation ("CAC"). The adhesion contract written by CAC provides, under the heading "Arbitration Clause" (in part, with emphasis added):

> This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. . . .
>
> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, . . . "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. . . .
>
> Either You or We *may* require any Dispute to be arbitrated and *may do so* before or after a lawsuit has been started over the Dispute or with respect to other Disputes *or counterclaims brought later in the lawsuit*. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. . . .
>
> If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute. In addition, if You or We elect to arbitrate a Dispute, (a) neither You nor We may participate in a class action in court or in a class-wide arbitration, either as a plaintiff, defendant or class member; (b) neither You nor We may act as a private attorney general in court or in arbitration; (c) Disputes brought by or against You may not be joined or consolidated with Disputes brought by or against any other person; and (d) the arbitrator shall have no power or authority to conduct a class-wide arbitration, [or] private attorney general arbitration . . . .

To repeat, the gist of this clause is that either party "may require" the opposing party to arbitrate any dispute – a choice of phrasing that seems quite tentative, almost illusory in form.[2] But the clause also contains anti-waiver language, saying that "after a lawsuit has been started over the Dispute," either party may still require the arbitration of the entire Dispute – particularly if the opposing party has "counterclaims brought later in the lawsuit."

I will divide my argument at this point like CAC has divided its arbitration clause: first, I will show the majority erred in its conclusion that CAC did not waive its right to arbitration. Second, I will show that the majority opinion failed to weigh CAC's anti-waiver language properly, and it failed to recognize CAC waived that part of the clause. Finally, I dissent on general grounds of public policy, because the majority opinion

---

[2] A contract is illusory, and thus unenforceable, if it lacks mutuality. In other words, if one party to a contract has discretion whether to perform his side of the bargain, the bargain is illusory, lacks sufficient mutuality to form consideration and is, therefore, unenforceable. As the treatise *Williston on Contracts* states:

> One of the most common types of promise that is too indefinite for legal enforcement is the promise where the promisor retains an unlimited right to decide later the nature or extent of the promisor's performance. Words of promise which by their terms make the performance entirely optional with the promisor whatever may happen, or whatever course of conduct in respects the promisor may pursue, do not constitute a promise but form only an illusory promise.

1 Williston on Contracts § 4:34 (4th ed. 2026) (footnotes omitted).

4

is allowing CAC and other debt collectors to use anti-waiver and arbitration clauses to abuse the court system and circumvent state and federal consumer protection laws, not to achieve fair and speedy justice.

Since 2017 in West Virginia, and 2022 at the federal level, the rule regarding waiver of a right to arbitration has been simple: to determine whether a party has waived its right to compel arbitration, a court must determine whether the party seeking to compel (1) knew the right to compel arbitration existed, and (2) acted inconsistently with the intention of enforcing the right to compel arbitration. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417-19 (2022); Syl. Pt. 6, *Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016). The entire focus of the waiver analysis is on the actions of the party seeking to compel arbitration.

The United States Court of Appeals for the Seventh Circuit has, since 1942, applied this two-part test in a simple fashion to assess if a right to arbitration has been waived. The rule in the Seventh Circuit has developed into a simple one: filing a lawsuit without asserting a known contractual right to arbitration generally waives any right to arbitration. Filing an answer does the same. As the court said, "Commencement of a suit in court rather than reliance upon arbitration, with answer by the opposing party upon the merits, is a waiver of the right to arbitrate by both parties." *Galion Iron Works & Mfg. Co. v. J.D. Adams Mfg. Co.*, 128 F.2d 411, 413 (7th Cir. 1942). By 1995, the Seventh Circuit had evolved that rule to an even simpler guide: "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to

5

arbitrate." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc*., 50 F.3d 388, 390 (7th Cir. 1995). Members of this Court have, since *Parsons* in 2017, advocated for a similar bright-line rule: "A party that files or answers a civil complaint without asserting a contractual right to arbitration has waived the right." *Ampler Burgers Ohio LLC v. Bishop*, 250 W. Va. 269, 290, 902 S.E.2d 818, 839 (2024) (Hutchison, J., and Wooton, J., dissenting). *See generally*, Thomas J. Lilly, Jr., *Participation in Litigation As A Waiver of the Contractual Right to Arbitrate: Toward A Unified Theory*, 92 Neb. L. Rev. 86, 89-90 (2013). ("[T]he goal of fair and efficient dispute resolution in conformity with the parties' agreement is better served by a rule that the contractual right to compel arbitration of a dispute is waived if it is not asserted by the time the defendant answers the complaint.").

Additionally, in *Parsons*, this Court expressly found that "[t]here is no requirement that the party asserting waiver show prejudice or detrimental reliance." 237 W. Va. at 141, 785 S.E.2d at 848, syl. pt. 6, in part. In *Morgan*, the United States Supreme Court likewise found that "prejudice is not a condition of finding that a party . . . waived its right to . . . compel arbitration under the FAA." *Morgan*, 596 U.S. at 419. Putting it simply, West Virginia and federal courts assessing waiver do not ask about prejudice. Yet this Court persists in weighing the facts of every case, and then it *sub silentio* applies a prejudice requirement to questions regarding waiver of arbitration rights.

Take the instant case: there is nary a mention of prejudice in the majority opinion, yet the opinion weighs the facts to, effectively, say three-and-a-half years of litigation just wasn't prejudicial enough, substantial enough, consequential enough to rise

to a level of waiver. I dissent because, frankly, the moment CAC filed its lawsuit, it abandoned and waived the right to arbitration it wrote into its form contract.

To begin, CAC did not assert its right to arbitration at the beginning; instead, it filed a lawsuit in circuit court in February 2020. And it is absurd to think CAC did not know about the right to arbitration, because it drafted the arbitration clause and attached the contract to its 2020 complaint. "[A] party should be deemed to have knowledge of the terms of agreements that he has executed." *Williams v. Tucker*, 239 W. Va. 395, 401, 801 S.E.2d 273, 279 (2017) (citations omitted). I would hold that, at this point, CAC waived its right to arbitrate any part of its dispute with defendants Kenneth and Kerry Stanley.

Thereafter, the Stanleys filed a *pro se* answer, did not assert their right to arbitration, and likewise waived their right to arbitrate their dispute with CAC. Next, CAC served discovery requests on the Stanleys essentially asking them to admit the existence of their liability, then sent correspondence threatening the Stanleys with a final judgment if they did not respond. CAC moved for summary judgment, invoking the authority of the circuit court for a final ruling – and, again, it attached a copy of the contract with the arbitration clause. CAC filed repeated notices of hearings on its motion for summary judgment. Subsequently, in June 2023, the Stanleys obtained counsel who filed (1) an amended answer, and (2) a counterclaim complaint, and propounded written discovery. Once the Stanleys asserted a defense, in August 2023, CAC decided to abandon its circuit court action, and it moved to dismiss its own complaint and to compel the Stanleys to arbitrate the entire dispute.

The record shows three-and-a-half years of litigation, with CAC being on the cusp of receiving summary judgment. The majority opinion passes off CAC's activity as "modest litigation activity" that was in no way "inconsistent with its express contractual right[.]" What should be a simple, black-letter, easy-to-apply rule becomes Play-Doh in the hands of the majority opinion; filing a lawsuit is wholly contrary to the right to arbitrate and should be a near-automatic waiver, but the majority opinion assesses the "totality" of the record to, routinely it seems, decide that acting contrary to a right cannot be a waiver of the right, at least not when arbitration is involved. *See also Ampler Burgers Ohio LLC v. Bishop*, 250 W. Va. 269, 902 S.E.2d 818 (2024) (despite 400 days of litigation and discovery, including obtaining information not discoverable in arbitration, majority opinion found "the litigation process had barely begun[.]").

The United States Supreme Court has stressed that courts "may not make up a new procedural rule based on the FAA's 'policy favoring arbitration.'" *Morgan*, 596 U.S. at 419. And yet, that is what this Court keeps doing when asked to assess if a party seeking to compel arbitration has actually waived its right to arbitration.

In sum, my first reason for dissenting is because I would find that CAC waived its right to arbitration the moment it filed suit against the Stanleys. Put simply, CAC has chosen to "game the system by seeking a decision on the merits [in court] while keeping the arbitration option as a backup plan in case the effort fails." *In re Mirant Corp.*, 613 F.3d 584, 590 (5th Cir. 2010).

8

The second part of CAC's arbitration clause – and what the majority opinion turns upon – consists of the anti-waiver language which provides that, even if a party files a lawsuit, either party may later assert their right to arbitration – particularly if the opposing party has filed a counterclaim. The majority opinion fails to even recognize that this language is an anti-waiver clause. Instead, it treats the language as inviolable and controlling and does not recognize that CAC's course of conduct also waived the right to insist on arbitration despite the Stanleys' counterclaims.

The overarching principle I must make clear here is that freedom of contract includes the right to waive anti-waiver language, language essentially saying "we cannot waive this clause by our actions." *Corbin on Contracts* says:

> [I]t is generally accepted that a party to a written contract can waive – expressly or by performance – the anti-waiver clause itself. Waiver is a post-contract formation phenomenon, and parties to a contract generally cannot deprive themselves of the power to alter, vary, or discharge a contract, even in the face of an express provision in their contract denying such power. Freedom of contract dictates this outcome.

Timothy Murray, 8 Corbin on Contracts § 40.13 (2022). *See also* 13 Williston on Contracts § 39:36 (4th ed. 2026) ("The general view is that a party to a written contract can waive a provision of that contract by conduct despite the existence of a so-called antiwaiver or failure to enforce clause in the contract." This rule "is based on the view that the nonwaiver provision itself, like any other term in the contract, is subject to waiver by agreement or conduct during performance."). Put succinctly, freedom of contract dictates that parties can, by their course of conduct, waive an anti-waiver clause.

9

We recognized in passing that anti-waiver clauses in arbitration agreements can themselves be waived in *Citibank, N.A. v. Perry*, because to hold otherwise would allow parties to sue and "test the water before taking the swim":

> [T]he presence of [a] "no waiver" clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration. . . . This makes sense because to allow the "no waiver" clause to preclude a finding of waiver would permit parties to waste scarce judicial time and effort and hamper judges' authority to control the course of the proceedings and allow parties to test[ ] the water before taking the swim by delaying assertion of their right to arbitration until the litigation is nearly complete.

*Citibank, N.A. v. Perry*, 238 W. Va. 662, 666, 797 S.E.2d 803, 807 (2016) (quoting *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012)). The Massachusetts Supreme Court similarly observed that to allow an anti-waiver clause in an arbitration agreement to preclude a finding of waiver would

> permit parties to waste scarce judicial time and effort and hamper judges' authority to control the course of proceedings before them and to correct any abuse of those proceedings, and then demand arbitration. Further, delay in demanding arbitration until after judicial proceedings are almost complete permits the losing party to test the water before taking the swim.

*Home Gas Corp. of Massachusetts v. Walter's of Hadley, Inc.*, 532 N.E.2d 681, 685 (Mass. 1989) (quotations and citations omitted). Most courts that have interpreted anti-waiver clauses in arbitration agreements have done so narrowly. They have read anti-waiver clauses in arbitration agreements as "intended to permit parties to seek provisional remedies or other judicial proceedings that would not function to displace arbitration on the underlying dispute." *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 85

10

(2d Cir. 1998) (citing numerous authorities holding no waiver clauses in arbitration agreements exist to allow suits for interim or provisional remedies like attachments, restraining orders or injunctions, relief not available in arbitration). Anti-waiver clauses in arbitration agreements are not, and cannot, be used as a means for gamesmanship in choosing a forum. But that is what the majority opinion allows.

Further, if a party to an arbitration agreement waives a right to arbitrate part of a dispute, then the general rule is that the waiver extends to all claims with a nexus to the dispute. Waiver extends to "all of the parts of the dispute . . . deemed to be interrelated." *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 450 A.2d 1304, 1309 (Md. 1982). Claims "are related when *the claim is in actuality part of one basic issue.*" *Cain v. Midland Funding, LLC*, 156 A.3d 807, 817 (Md. 2017) (quotations omitted, emphasis in original). *See also Maddy v. Castle*, 58 Cal. App. 3d 716, 722 (Ct. App. 1976) (Waiver of the right to arbitrate one part of a dispute constituted waiver of the right to arbitrate the entire dispute, because the dispute involved a single issue, not unrelated issues.). The interrelatedness of CAC's and the Stanleys' competing claims is particularly clear in light of CAC's arbitration clause defining "Dispute" as having "the broadest meaning possible" and encompassing any "controversy or claim . . . arising out of or in any way related to this Contract[.]"

Accordingly, in this case, when CAC sued and waived its right to arbitration, it waived its right to arbitrate all aspects of its contract collection dispute, claims and counterclaims alike. "An individual, once he has chosen a forum other than arbitration to

11

seek relief which is of a type that arbitration could grant, may not thereafter compel arbitration." *Maddy v. Castle*, 58 Cal. App. 3d at 722. As one Texas court said,

> Freedom of contract is a policy of individual self-determination; individuals can control their destiny and structure their business interactions through agreements with other competent adults of equal bargaining power, absent violation of law or public policy. The contractual doctrine of waiver, whether express or implied, rests on a similar conceptual policy of individual self-determination—an idea no more complicated than that *any competent adult can abandon a legal right and if he does so then he has lost it forever*. To the extent there has been any doubt up to this time, we affirm that a party's rights under a nonwaiver provision may indeed be waived expressly or impliedly.

*Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 482-83 (Tex. 2017) (quotations and footnotes omitted, emphasis added). Stated simply, it is a general rule that once a party has waived his right to arbitration, that waiver is not revocable – even if the contract contains anti-waiver language. *See generally Lowe's Home Centers Inc. v. THF Clarksburg Dev. Two, LLC*, No. 1:12CV72, 2014 WL 1048521, at *7 (N.D.W. Va. Mar. 18, 2014) ("[N]o waiver clauses are themselves subject to waiver upon a showing that the party asserting the clause has waived its rights under another provision of the contract.").

Hence, I also dissent because, by filing a collection-action lawsuit in circuit court, CAC waived *all* its rights to arbitrate any aspect of that collection action. Contrary to the anti-waiver language in the arbitration clause, that means CAC waived its right to arbitrate any counterclaims connected to that collection action.

12

Lastly, I dissent on public policy grounds because the majority opinion has effectively sanctioned improper forum shopping designed to subvert state and federal consumer protection laws.

The majority opinion addresses CAC's lawsuit as a lone, singular case hinging on some arcane rules of arbitration and contracts. What the majority opinion dismissed, however, is evidence in the record that the instant case is but one of a legion of similar lawsuits. The record contains an order from a different circuit court, the Circuit Court of Berkeley County, in a case styled *Credit Acceptance Corporation v. Laprad.*[3] The facts of *Laprad* mirror this case: CAC sued Laprad in circuit court in a collection action; Laprad eventually answered and filed a counterclaim; and CAC then moved to compel arbitration under the same arbitration clause at issue here. In its order finding CAC waived its right to arbitrate and refusing to compel Laprad to arbitrate, the circuit court accused CAC of "gamesmanship in forum selection." The court found "CAC chose the West Virginia court system [when it was] perfectly suitable to sue *pro se* consumers, but strategically moves for arbitration for any potential consumer claims." The court examined

---

[3] *See* "Order Denying Credit Acceptance Corporation's Motion to Compel Arbitration," *Credit Acceptance Corporation v. Laprad*, Berkeley County No. CC-02-2024-C-147 (December 30, 2024). Counsel for the Stanleys filed a similar order with this Court from yet another court denying Credit Acceptance Corporation's motion to compel arbitration. *See* "Order Denying Plaintiff's Motion to Compel Arbitration," *Credit Acceptance Corporation v. Murray*, Mercer County No. CC-28-2023-C-141 (May 23, 2025).

13

its own docket, and found CAC routinely sues *pro se* consumers in collection actions in court, but only invokes arbitration when the consumer puts up a defense:

> CAC's sudden disfavor for the West Virginia court system [in this case] is striking considering that, in the year preceding its filing of this lawsuit, it has, in Berkeley County *alone*, filed in magistrate court 30 lawsuits, and in the Circuit Court, filed 65 lawsuits and obtained 21 judgments. More troubling, since August 6, 2024 – *the same day that CAC filed the instant motion [to compel arbitration]* – it filed 14 lawsuits in this Circuit Court. CAC's modus operandi of filing in circuit court and then moving to compel when [consumers] get counsel cannot be endorsed.

A recent academic study examined nationwide debt collection practices and shows that CAC's actions are common among debt collectors. The study found "[d]ebt collection litigation dominates state court dockets." Noa Gutow-Ellis, "Arguing Arbitration Waiver after *Morgan v. Sundance*: A Path to Hold Debt Buyers Accountable for Abusive Collection Litigation," 30 Cardozo J. Equal Rts. & Soc. Just. 193, 201 (2023). "Scholarship, legal, and regulatory actions make clear that debt buyers . . . rely on abusive litigation strategies and particularly seek default judgments." *Id.* at 217. The study details how debt collectors (who usually hold debt contracts with arbitration clauses) spend hundreds of millions of dollars each year filing lawsuits largely with the goal of securing a default judgment against *pro se* litigants, because such a court judgment opens up collection tools like garnishing wages and seizing bank accounts. *Id.* State legislatures and Congress have enacted statutes to protect consumers from unfair debt collection practices (tools like the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA")). *Id.* at

14

204. But for these statutes "to have teeth, consumers harmed by debt collection litigation must be free to bring lawsuits alleging statutory violations." *Id.*

What the study revealed is that debt collectors nationwide rely upon arbitration clauses in debt contracts to quash consumers' attempts to invoke consumer protection laws. Debt collectors "[i]nvok[e] limited judicial resources" when it appears a consumer will proceed *pro se* but will "turn[] to arbitration" when the consumer asserts a defense or seeks to invoke consumer protection laws. *Id.* at 214. "[T]here are arbitration provisions specific to maintaining a debt buyer's power to invoke judicial resources when advantageous and to duck out of court when faced with the prospect of an unfavorable disposition on claims like those arising under the FDCPA." *Id.* at 215. This is precisely what CAC is now doing in West Virginia's courts: using judicial resources when it is advantageous to collect a debt, but ducking out of court and into arbitration to avoid contentions like those asserted by the Stanleys in their counterclaim.

The majority opinion treats CAC's arguments as a one-off, without recognizing that CAC is using its arbitration clause to abuse consumers and court resources. CAC's obvious policy is "arbitration for thee but not for me." CAC routinely sues, but the moment a consumer asserts a defense, CAC begs to remove the entire case to arbitration. By filing collection lawsuits, and doing so routinely, it is clear that CAC is deliberately waiving its right to arbitration. Moreover, it is waiving the right to arbitrate all claims connected to its collection lawsuit, including any consumer protection

counterclaims that might later be interposed by the consumer. To hold otherwise is to ignore reality.

For these reasons, I respectfully dissent.